UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Discover Property & Casualty Insurance Company,<br>          *Plaintiff,*<br>          *v.*<br>TETCO, Inc.,<br>          *Defendant.*<br><br>Mission Petroleum Carriers, Inc. and TETCO, Inc.,<br>          *Plaintiffs,*<br>          *v.*<br>Discovery Property & Casualty Insurance Company,<br>          *Defendant.* | Civil Nos. 3:12cv473 (JBA)<br>          3:12cv1485 (JBA)<br><br><br>March 18, 2013 |

**RULING ON MOTIONS TO DISMISS AND TO TRANSFER**

This is an insurance coverage dispute arising out of an underlying suit against Shell Chemical ("Shell") as a result of an explosion at a chemical plant in Fort Worth, Texas, in which Discover Property & Casualty Insurance Company ("Discover") indemnified Shell and paid a confidential settlement under an insurance policy Discover had issued to TETCO, Inc. ("TETCO") and its subsidiary, Mission Petroleum Carriers, Inc. ("Mission").   Discover alleges Breach of Contract (Count One), Unjust Enrichment (Count Two), and Quantum Meruit (Count Three) against TETCO and seeks declaratory judgment (Count Four) and attorneys' fees and costs (Count Five).   (*See* Compl. [Doc. # 1].)   In a consolidated action, Mission and TETCO brought suit against Discover for specific performance to compel arbitration or in the alternative for breach of contract. (*See TETCO, Inc. et al. v. Discover Prop. & Cas. Ins. Co.*, No. 12cv1485, Notice of Removal [Doc. # 1].)   TETCO and Mission move [Doc. ## 16, 58] to transfer this action to the Southern District of Texas, Houston Division.   TETCO also moves to dismiss for lack of personal jurisdiction [Doc. # 29], and for improper venue [Doc. # 30].   TETCO and

Mission contend that because they are Texas companies, doing business in Texas, and because the underlying events giving rise to this case took place in Texas, the case should be transferred to Texas as the most appropriate forum in which to decide these issues. TETCO also argues that this Court lacks personal jurisdiction over it and that venue is improper.[1]  Discover counters that because TETCO and Mission consented to venue and personal jurisdiction in this District in the agreements at issue in this action, the case may properly be heard here.  For the following reasons, TETCO's motions to dismiss, and TETCO and Mission's motions to transfer to another district are denied.

## I.     Background

In December 1995, TETCO and United States Fidelity and Guaranty Company ("USF&G")[2] entered into an Indemnity Agreement that contained Connecticut choice–of–law and forum selection clauses, in which TETCO consented "irrevocably" to personal jurisdiction in federal court in Connecticut for any legal proceedings arising out of or related to the agreement.  (*See* Indemnity Agreement, Ex A to Compl.)[3]  Amendment #10

---

[1] Mission, as a plaintiff in the consolidated action, has not filed a motion to dismiss, but maintains that it has not waived its right to argue that the Court lacks personal jurisdiction over it.  (*See* Mission's Mot. to Transfer [Doc. # 58] at 2 n.1.)

[2] USF&G and Discover are both subsidiaries of The Travelers Companies, Inc. (*See* Morin Aff. [Doc. # 32–2] ¶ 5.)

[3] The Indemnity Agreement reads as follows:
To the extent that any legal action, suit or proceeding arises out of or relates to this Agreement or to the transactions contemplated hereby, the parties hereto irrevocably submit to the jurisdiction of the state courts of the State of Connecticut or any federal court located in the State of Connecticut to hear and determine such action, suit or proceeding.  Each party agrees not to assert as a defense in any such action, suit or proceeding, any Claim that it is not subject personally to the jurisdiction of such court; that its property is exempt or immune from attachment or

to the Indemnity Agreement, effective December 1, 2004, specifically amends Schedule A of the Indemnity Agreement to include Commercial General Liability Insurance Policy No. D007L0016 (the "CGL Policy").  (*See* Indemnity Agreement.)  TETCO and Mission are named insureds on the CGL Policy, which was issued by Discover.  (*See* Compl. ¶ 4.)

On March 2, 2001, Mission entered into a Base Motor Carrier Agreement under which Mission agreed to ship Shell's petroleum products to Shell's customers.  (*See id.* ¶ 18; Base Motor Carrier Agreement, Ex. B to Compl.)  The Base Motor Carrier Agreement stated that Shell would be named as an additional insured on Mission's insurance policy.  (Compl. ¶ 19.)  On July 28, 2005, Mission delivered a load of Shell products to one of Shell's customers in Fort Worth, Texas.  (*Id.* ¶ 20.)  During the delivery, an explosion and fire erupted, damaging Shell's customer and an adjacent property.  (*Id.*)  The injured parties sued Shell and Mission to recover for their property damage.  (*Id.* ¶ 21.)  As an additional insured under the CGL Policy, Shell demanded coverage from Discover.  (*Id.* ¶ 24.)  When Discover rejected Shell's claim, Shell sued Discover.  Before final judgment entered in that suit, Discover, with TETCO's consent, paid a confidential settlement amount to Shell to resolve the underlying property damage suit.  (*Id.* ¶¶ 31, 48–52.)

As a result of the settlement agreement with Shell, Mission and Discover entered into a Letter Agreement in which they agreed to mediate the dispute over whether TETCO was obligated to reimburse Discover for the settlement costs under the CGL Policy and the Indemnity Agreement.  (*See* Letter Agreement, Ex. A to Wright Aff. [Doc.

---

execution; that the action, suit or proceeding is brought in an inconvenient forum; that the venue of the action, suit or proceeding is improper, or that this Agreement or the subject matter hereof may not be enforced in or by such court.

(Ex. A to Compl. at 13–14.)

# 18–1] at 3.)  Under the Letter Agreement, the parties agreed that if the mediation failed to bring about a resolution, the parties would submit the matter to binding arbitration in Texas within 90 days of the mediation. (*Id.*)[4]   Discover and TETCO entered mediation on June 21, 2011, but failed to resolve their dispute.  (Morin Aff. ¶ 7).  Discover's counsel attempted to negotiate with TETCO's counsel to pick an arbitrator and schedule arbitration several times over the course of August and September 2011, but TETCO's counsel failed to cooperate and no arbitration demand was ever filed.  (*Id.* ¶ 8; Ex. C to *id.*)  Seven months later, on March 29, 2012, Discover filed the instant action.

On June 15, 2012, TETCO, with its subsidiary Mission, also filed suit in Texas state court, seeking specific performance to compel arbitration under the Letter Agreement.  Discover removed the case to federal court in the Southern District of Texas on July 13, 2012.   On July 20, 2012, Discover moved to dismiss for improper venue or in the alternative to transfer to the District of Connecticut.   On October 12, 2012, the Southern District of Texas granted Discover's motion to transfer pursuant to the first–to–file rule.  (*See TETCO, Inc. et al. v. Discover Property & Casualty Ins. Co.*, No. 12cv1485, Oct. 12, 2012 Order [Doc. # 17].)   Discover moved [Doc. # 44] to consolidate these two cases before this Court, which motion was granted on October 23, 2012.  (*See* Order of Consolidation [Doc. # 47].)

---

[4] The relevant language of the Letter Agreement reads as follows:
MPC and Discover disagree about which party, MPC or Discover should ultimately be responsible for the payment of . . . the "Shell Settlement" . . . .  If the parties cannot reach an agreement, the parties agree to submit the issues between MPC and Discover regarding the financial responsibility of MPC and Discover for the Shell Settlement to mediation in Texas . . . .  If the mediation fails to bring a resolution, the parties agree to submit the matter to binding arbitration in Texas within 90 days of the mediation.
(Letter Agreement ¶ 7.)

On September 26, 2012, before either this Court or the Southern District of Texas had ruled on the pending motions relating to the agreements at issue in this case, TETCO filed a Demand for Arbitration in Texas to resolve the dispute.   On October 10, 2012, Discover moved [Doc. # 40] for a preliminary injunction to stay the Texas arbitration until the motions pending in both federal courts had been decided.    During a status conference held before the duty judge on October 15, 2012, the parties agreed to informally stay arbitration pending the Court's ruling on the motions to dismiss and the motions to transfer.  (*See* Order [Doc. # 43] (denying as moot Discover's motion for preliminary injunction).)

## II.   Discussion

### A.   TETCO's Motion to Dismiss for Lack of Personal Jurisdiction

TETCO moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  "Whether a court has personal jurisdiction over a non–resident defendant is determined by the law of the state in which the court sits," and thus Connecticut law applies.  *HSQD, LLC v. Morinville*, No. 3:11-cv-1225(WWE), 2012 WL 2088698, at *2 (D. Conn. June 8, 2012).  The plaintiff bears the burden of establishing that a court has jurisdiction, by showing 1) that the state long–arm statute authorizes jurisdiction over the defendant, and 2) that the exercise of jurisdiction over the defendant would not violate constitutional principles of due process.  *See Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.*, No. 3:10cv1294(JBA), 2011 WL 577333, at *5 (D. Conn. Feb. 9, 2011) (citing *Metro Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). In order to satisfy due process, "the defendant must have sufficient 'minimum contacts' with the forum, and the exercise of jurisdiction must be fair and reasonable."  *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   "When a motion to dismiss is

based on pleadings and affidavits, dismissal is appropriate only if the submissions, when viewed in the light most favorable to the plaintiff, fail to make a prima facie showing of personal jurisdiction over the defendants." *Gorbecki v. Mercedes Benz of Sarasota*, 3:08-CV-397(PCD), 2008 WL 2185914, at *3 (D. Conn. May 22, 2008).

Discover claims that the Court has personal jurisdiction over TETCO based on the forum selection clause in the Indemnity Agreement.[5] "Where an agreement contains a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under the state long–arm statutes or federal constitutional due process." *Bricken v. Bergtholdt*, No. 11cv1992(WWE), 2012 WL 2958217, at *1 (D. Conn. July 19, 2012). "Parties may consent to personal jurisdiction through forum–selection clauses in contractual agreements. *Id.* (citing *D.H. Blair & Co., Inc. v. Gottdiemen*, 462 F.3d 95, 103 (2d Cir. 2006)); *see also Phoenix Leasing, Inc. v. Kosinski*, 47 Conn. App. 650, 653 (1998) ("Thus in commercial transactions, parties often consent to resolve disputes in a particular jurisdiction by incorporating forum selection clauses into their contracts. Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the jurisdiction of a particular tribunal." (citing *U.S. Trust Co. v. Bohart*, 197 Conn. 34, 39 (1985))).

TETCO first argues that because Discover is not a signatory to the Indemnity Agreement, it cannot enforce the forum selection clause against TETCO.   Discover counters that because it is "closely related" to USF&G, it is entitled to enforce the clause. Courts in the Second Circuit have recognized that "[w]here the alleged conduct of the

---

[5] Counsel for Discover agreed during a status conference regarding this motion that if the Court determines that the forum selection clause is not valid and enforceable against TETCO, TETCO lacks sufficient minimum contacts with Connecticut to be subject to the Court's jurisdiction.

nonparties is closely related to the contractual relationship, a range of transaction participants, parties, and non-parties, should benefit from and be subject to forum selection clauses." *BNY AIS Nominees Ltd v. Quan*, 609 F. Supp. 2d 269, 275 (D. Conn. 2009) (internal quotations omitted); *see also Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) ("We find ample support for the conclusion that the fact a party is a non–signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause."); *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597 (E.D.N.Y. 2011) (a non–party to a contract may enforce a forum selection clause against a party if the non–party meets the "closely related" test). The "closely related" test is met where it would be foreseeable that a non–party could seek to enforce a contract, or where it was clear that a company entered into a contract in order to confer a pecuniary benefit on a related company. *See Quan*, 609 F. Supp. at 276–77. Here, the disputed Discover policy was incorporated by reference into the Indemnity Agreement, and thus it should have been foreseeable to TETCO that Discover, as the issuer of one of the referenced policies, might seek to enforce the clauses of the Indemnity Agreement. Furthermore, USF&G and Discover were related subsidiaries of Travelers, and they both issued insurance policies to TETCO at reduced rates in consideration for the terms of the Indemnity Agreement. Therefore, Discover has alleged sufficient facts to claim that it was sufficiently "closely related" to USF&G to enforce the forum selection clause in the Indemnity Agreement against TETCO.

TETCO next argues that even if Discover could enforce the Indemnity Agreement, the forum selection clause is no longer operative because the arbitration clause in the Letter Agreement supersedes the forum selection clause in the Indemnity Agreement. However, based on the limited record, it cannot be said whether the forum

selection clause and the arbitration clause conflict.  In making this argument, TETCO appears to conflate the question of whether the Court has jurisdiction over TETCO's underlying claims with the question of whether the Court has jurisdiction to decide the issue of arbitrability. "The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (quoting *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002)) (internal quotations omitted).  Thus, the two contract clauses could be interpreted in such a way that they do not conflict—i.e., under the forum selection clause in the Indemnity Agreement, the Court has personal jurisdiction over TETCO for the purpose of determining whether the arbitration clause in the Letter Agreement is valid and arbitration should be compelled.

TETCO relies primarily on *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005), for the proposition that "a party which agrees to submit to arbitration and a specific forum for arbitration knowingly waives its rights to enforce a preceding forum–selection clause with respect to claims subject to the arbitration agreement." (Def.'s Reply [Doc. # 37] at 4.)  However, in *Bank Julius Baer & Co.*, the Second Circuit was interpreting "a broad agreement to arbitrate and a *later–executed* agreement that contained a forum selection clause," *Bank Julius Baer & Co.*, 424 F.3d at 284 (emphasis added), which is the reverse of the sequence in this case.  Furthermore, the Second Circuit in that case recognized that the forum selection clause could be understood as complementary to the arbitration agreement:

> The Forum Selection Clause merely requires [the defendant] to submit to suit in the courts of New York.  It may be read, consistent with the Arbitration Agreement, in such a way that [the plaintiff] and [the

defendant] are required to arbitrate their disputes, but that to the extent the Bank files a suit in court in New York—for example, to enforce an arbitral award, or *to challenge the validity or application of the arbitration agreement*—[the defendant] will not challenge either jurisdiction or venue.

*Id.* (emphasis added).  Similarly, the Indemnity Agreement and the Letter Agreement could be read together to mean that TETCO waived personal jurisdiction objections for the purposes of a suit in Connecticut to determine whether there is a valid agreement between the parties to arbitrate this dispute.  Therefore, the arbitration clause in the Letter Agreement did not abrogate the forum selection clause in the Indemnity Agreement, and Discover has alleged sufficient facts to claim that the Court retains personal jurisdiction over TETCO pursuant to this clause for the purpose of determining the arbitrability of this dispute.[6]  Thus, TETCO's motion to dismiss for lack of personal jurisdiction is denied.

### B.     TETCO's Motion to Dismiss for Improper Venue

TETCO also moves to dismiss for improper venue on much the same grounds as its motion to dismiss for lack of personal jurisdiction.  Discover argues that venue is proper based on the forum selection clause in the Indemnity Agreement.  That clause states that TETCO "agrees not to assert as a defense in any such action, suit or proceeding . . . that the venue of the action, suit or proceeding is improper."  (Indemnity Agreement.) "The same standard [] is applied to a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) as is applied to dismissals for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)."  *Marcus v. American Contract Bridge League*, 562 F. Supp. 2d

---

[6]  The Court need not consider Discover's additional arguments that the arbitration agreement is invalid, as they will presumably be addressed in a future motion to compel arbitration.

360, 362–63 (D. Conn. 2008) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).  Thus, as with the issue of personal jurisdiction, the forum selection clause is dispositive of the issue of venue.  *See United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 224 (D. Conn. 2003) ("Additionally, a valid forum selection clause is dispositive of [the defendant's] claim of improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406.").  Discover and TETCO make identical arguments regarding which clause—the forum selection clause in the Indemnity Agreement or the arbitration clause in the Letter Agreement—should control, and whether or not the arbitration clause is valid, as they do in their briefings on TETCO's motion to dismiss for lack of personal jurisdiction. Because the Court has concluded that Discover has alleged sufficient facts to claim that the forum selection clause in the Indemnity Agreement is valid and enforceable against TETCO in this action, TETCO has consented to venue in this District and its motion to dismiss for improper venue is therefore denied.

### C.      TETCO's and Mission's Motions to Transfer to Another District

TETCO and Mission move pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Federal District Court for the Southern District of Texas, Houston Division.  "In determining whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is appropriate, district courts engage in a two–part inquiry, asking:  (1) whether an action might have been brought in the proposed transferee forum, and, if so, (2) whether the transfer promotes convenience and justice.  *See Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011).  The defendant bears the burden of establishing by clear and convincing evidence that transfer would be proper.  *See N.Y. Marine & General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010).  TETCO and Mission argue that both

10

of these suits could have been brought in Texas as all parties are subject to personal jurisdiction in the Southern District of Texas.

When considering whether a transfer promotes convenience and fairness, district courts consider, *inter alia*:  (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) the efficiency and the interests of justice, based on the totality of the circumstances.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006).  TETCO and Mission argue that all but the first of these factors weigh in their favor.  Discover counters that the forum selection clause in the Indemnity Agreement—in which the parties expressly waives the right to argue that the District of Connecticut is an inconvenient forum—should be dispositive as to both motions.

### 1.     *Plaintiff's Choice of Forum:  The Forum Selection Clause*

The Court gives considerable weight to the forum selection clause in the Indemnity Agreement because the Supreme Court has found that a forum selection clause is a "significant factor" in the § 1404(a) analysis, *see Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988), and when courts in this District consider a motion to transfer, "in most instances the [forum selection] clause will be given controlling weight," *Kirkman v. Martin*, No. 3:06cv393(MRK), 2006 WL 3041101, at *4 (D. Conn. Oct. 24, 2006).

With respect to Mission's motion to transfer, Mission argues because it is not a signatory to the Indemnity Agreement it is not subject to the forum selection clause, and

that the Court therefore lacks personal jurisdiction over it and should transfer the case. However, the Second Circuit has recognized that "the fact a party is a non–signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Suez*, 85 F.3d at 701.  As discussed above, if a party is closely related to one of the signatories to a contract containing a forum selection clause, that clause may be enforced against the non–signatory party.  Where it would be foreseeable that a non–party could be subject to a contract, or where it was clear that a company entered into a contract in order to confer a pecuniary benefit on a related company, the "closely related" test is met. *See Quan*, 609 F. Supp. at 276–77.  Here, the CGL Policy, on which Mission was a named insured, was incorporated by reference into the Indemnity Agreement.  The Indemnity Agreement states that it "shall apply to and shall run concurrently with the coverages under the Policies," which include the CGL Policy on which Mission was named.  (*See* Indemnity Agreement.)  Therefore, the language of the Indemnity Agreement shows that it was intended to be related to the underlying insurance policies, and thus it should have been foreseeable to Mission, as the insured on of one of the referenced policies, that it could be subject to the Indemnity Agreement.  Furthermore, TETCO entered into the Indemnity Agreement in order to procure insurance for itself and for its related subsidiary Mission, thereby conferring a pecuniary benefit on Mission.  Thus, Discover has alleged sufficient facts to claim that Mission was "closely related" to TETCO such that the forum selection clause in the Indemnity Agreement may be enforced against Mission and to claim that the Court has personal jurisdiction over Mission pursuant to that clause.  The Court therefore gives considerable weight to this clause in considering Mission's motion to transfer.

2.       *The Convenience of Witnesses*

TETCO and Mission maintain that the majority of the witnesses they intend to call at this time are located in Texas, and would be subject to a 1,700–mile journey and several hours of air travel to reach New Haven, making Houston much more convenient for them.  Discover counters that most of the identified witnesses relate to the underlying lawsuit and their testimony would not be relevant to this insurance coverage dispute, and further argues that since this is a dispute regarding the underlying policies of the Indemnity Agreement, some of the relevant witnesses for contract interpretation would be located in Connecticut where that agreement was negotiated.  However, since TETCO and Mission contend that Discover's payment to Shell was voluntary as Shell had no coverage under the CGL policy, witnesses involved with the Shell settlement likely would have relevant information in this case.  Thus, there are likely witnesses in both fora, and this factor does not weigh in favor of either forum.

3.       *The Location of Relevant Documents*

TETCO and Mission's claim that all of their relevant files and documents are located in Texas is given less weight in this era of electronic document production, *see* Charles Alan Wright & Arthur R. Miller, 15 *Federal Practice and Procedure* § 3853 (3d ed. 2007), and it is difficult to imagine that the parties would be unable to produce relevant documents with relative ease, regardless of where they needed to be produced.  This factor does not weigh in favor of either forum.

4.       *The Convenience of Parties*

TETCO and Mission argue that Connecticut is an extremely inconvenient forum for them as Texas companies.  Discover responds that because each party is from a different state, this factor cannot weigh in favor of either forum, but it does not give any

specific reasons as to why Texas would be an inconvenient forum. Thus, this factor weighs in favor of transfer.

### 5. *The Locus of Operative Facts*

TETCO and Mission's claim that the locus of operative facts is Texas because that is where the underlying lawsuit took place, where the CGL policy was issued, and where the agreement to arbitrate was negotiated is countered by Discover's position that its decisions regarding the relevant insurance policies and the Indemnity Agreement took place in Connecticut. However, since both the CGL policy and the arbitration agreement were to be carried out in Texas, this factor weighs in favor of transfer.

### 6. *The Availability of Process to Compel the Attendance of Unwilling Witnesses*

The parties raise the same arguments here as were raised in the discussion of the second factor. While it is likely that there are witnesses with relevant information in both fora, the witnesses in Connecticut are more likely to be employees under the control of a party than those in Texas who are beyond the Court's subpoena power. This factor weighs in favor of transfer to Texas.

### 7. *The Relative Means of the Parties*

Discover argues that all parties are companies with significant means, and neither Mission nor TETCO has alleged any facts that would counter this argument. Therefore, this factor does not weigh in favor of either forum.

### 8. *The Forum's Familiarity with Governing Law*

TETCO and Mission's assertion that both the underlying insurance policies and the Letter Agreement are governed by Texas law with which a Texas court would be more familiar does not factor in the choice–of–law clause in the Indemnity Agreement that

elects for the application of Connecticut law.  Because it is likely that a court addressing the merits of this dispute would need to consult both Texas and Connecticut law, this factor does not weigh in favor of either forum.

9.    *Trial Efficiency and the Interest of Justice*

TETCO and Mission assert that because this dispute involves a Texas contract, an underlying Texas lawsuit and judgment, and Texas insurance policies, Texas has a strong policy interest in adjudicating this dispute in a Texas forum with Texan jurors.  They also argue that the administrative burden on the Southern District of Texas would not be significant because if arbitration were to take place in Texas as agreed, that district would have the power to compel arbitration and enforce the award.  Furthermore, the parties are already represented by Texas counsel.  Discover offers only a conclusory statement that the interests of justice weigh against transfer.  Thus, this factor weighs in favor of transfer.

In sum, while three of the factors discussed above weigh in favor of transfer, they are largely neutralized by the four indifferent factors, and because Discover has sufficiently pled that the forum selection clause is enforceable against both Mission and TETCO, the substantial weight to be accorded the forum selection clause preponderates. *See Kirkman*, 2006 WL 3041101, at *4; *see also Orix Credit Alliance, Inc. v. Mid–South Materials Corp.*, 816 F. Supp. 230, 234 (S.D.N.Y. 1993) ("A forum selection clause is determinative of the convenience to the parties.").  Therefore, Mission and TETCO's motions to transfer are denied.

**III.      Conclusion**

For the reasons discussed above, TETCO's Motions to Dismiss for lack of personal jurisdiction [Doc. # 29] and improper venue [Doc. # 30] are DENIED, and TETCO and Mission's Motions [Doc. ## 16, 58] to Transfer are DENIED.


IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 18th day of March, 2013.