UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, *Plaintiff,* *v.* TETCO, INC., *Defendant.* | Civil No. 3:12cv473 (JBA) February 19, 2014 |

**RULING ON MOTION TO COMPEL ARBITRATION**

This is an insurance coverage dispute arising out of an underlying suit against Shell Chemical ("Shell") as a result of an explosion at a chemical plant in Fort Worth, Texas, in which Discover Property & Casualty Insurance Company ("Discover") indemnified Shell and paid a confidential settlement under an insurance policy Discover had issued to TETCO, Inc. ("TETCO") and its subsidiary, Mission Petroleum Carriers, Inc. ("Mission").   Discover alleges Breach of Contract (Count One), Unjust Enrichment (Count Two), and Quantum Meruit (Count Three) against TETCO and seeks declaratory judgment (Count Four) and attorneys' fees and costs (Count Five).  (*See* Compl. [Doc. # 1].)  In a consolidated action, Mission and TETCO brought suit against Discover for specific performance to compel arbitration or in the alternative for breach of contract. (*See TETCO, Inc. et al. v. Discover Prop. & Cas. Ins. Co.*, No. 12cv1485, Notice of Removal [Doc. # 1].)   Mission and TETCO now move [Doc. # 68] to compel arbitration of this dispute, and to dismiss or stay this action pending arbitration.  For the reasons that follow, Mission and TETCO's motion is granted, arbitration is compelled, and this case is dismissed.

I.      **Background**

In December 1995, TETCO and United States Fidelity and Guaranty Company

("USF&G")[1] entered into an Indemnity Agreement that contained Connecticut choice–

of–law and forum selection clauses.  (*See* Indemnity Agreement, Ex A to Compl. [Doc.

# 1] at 13–14.)[2]   Amendment #10 to the Indemnity Agreement, effective December 1,

2004, specifically amends Schedule A of the Indemnity Agreement to include

Commercial General Liability Insurance Policy No. D007L0016 (the "CGL Policy").  (*See*

Indemnity Agreement.)  TETCO and Mission are named insureds on the CGL Policy,

which was issued by Discover.  (*See* Compl. ¶ 4.)

On March 2, 2001, Mission entered into a Base Motor Carrier Agreement under

which Mission agreed to ship Shell's petroleum products to Shell's customers.  (*See id.*

---

[1] USF&G and Discover are both subsidiaries of The Travelers Companies, Inc.
(*See* Morin Aff. [Doc. # 32-2] ¶ 5.)

[2] The Indemnity Agreement reads as follows:
This Agreement shall be governed by and construed in accordance with
the laws of the State of Connecticut, without regard to its rules regarding
conflict of laws.

To the extent that any legal action, suit or proceeding arises out of or
relates to this Agreement or to the transactions contemplated hereby, the
parties hereto irrevocably submit to the jurisdiction of the state courts of
the State of Connecticut or any federal court located in the State of
Connecticut to hear and determine such action, suit or proceeding.  Each
party agrees not to assert as a defense in any such action, suit or
proceeding, any Claim that it is not subject personally to the jurisdiction of
such court; that its property is exempt or immune from attachment or
execution; that the action, suit or proceeding is brought in an inconvenient
forum; that the venue of the action, suit or proceeding is improper, or that
this Agreement or the subject matter hereof may not be enforced in or by
such court.
(Indemnity Agreement at 13–14.)

¶ 18; Base Motor Carrier Agreement, Ex. B to Compl.)   The Base Motor Carrier Agreement stated that Shell would be named as an additional insured on Mission's insurance policy.   (Compl. ¶ 19.)   On July 28, 2005, Mission delivered a load of Shell products to one of Shell's customers in Fort Worth, Texas.   (*Id.* ¶ 20.)   During the delivery, an explosion and fire erupted, damaging Shell's customer and an adjacent property.   (*Id.*)   The injured parties sued Shell and Mission to recover for their property damage.   (*Id.* ¶ 21.)   As an additional insured under the CGL Policy, Shell demanded coverage from Discover.   (*Id.* ¶ 24.)   When Discover rejected Shell's claim, Shell sued Discover.   Before final judgment entered in that suit, Discover, with TETCO's consent, paid a confidential settlement amount to Shell to resolve the underlying property damage suit.   (*Id.* ¶¶ 31, 48–52.)

As a result of the settlement agreement, Mission and Discover entered into a Letter Agreement in which they "agreed to reserve their respective rights with respect to the CGL Policy and its application to defense and indemnity obligations with respect to the underlying suit."   (*See* Letter Agreement, Ex. A to Mot. to Compel § 6.)   The settlement checks for the underlying settlement were issued and delivered before the Letter Agreement was signed.   (*See* 2d Morin Aff. [Doc. # 70-1] ¶ 6.)   Under the Letter Agreement, the parties first agreed to attempt to resolve the dispute themselves, then to submit to mediation, and agreed that if the mediation failed to bring about a resolution, the parties would submit the matter to binding arbitration in Texas within 90 days of the mediation.   (*Id.* § 7.)[3]   The parties entered mediation on June 21, 2011, but failed to

---

[3] The relevant language of the Letter Agreement reads as follows:
MPC and Discover disagree about which party, MPC or Discover should ultimately be responsible for the payment of . . . the "Shell Settlement" . . . .

resolve their dispute.  (Morris Aff. [Doc. # 77] ¶¶ 3–4).[4]  Discover's counsel attempted to negotiate with Mission and TETCO's counsel to pick an arbitrator and schedule arbitration several times over the course of August and September 2011, but Mission and TETCO's counsel failed to cooperate and no arbitration demand was ever filed.  (See Email Correspondence, Ex. C to 2d Morin Aff.)  Specifically, Discover's counsel twice proposed two possible arbitrators to Mission and TETCO's counsel, but counsel for Mission and TETCO failed to respond to these communications.  (See Melinda Bradley

---

In consideration for Discover's payment set forth above, MPC and Discover agree to first attempt to come to a resolution regarding the financial responsibility of MPC and Discovery for the Shell Settlement on their own within 90 days of the consummation of the Chem-Solv Settlement and the Valley Solvent Settlement, whichever occurs last.  If the parties cannot reach an agreement, the parties agree to submit the issues between MPC and Discover regarding the financial responsibility of MPC and Discover for the Shell Settlement to mediation in Texas . . . .  If the mediation fails to bring a resolution, the parties agree to submit the matter to binding arbitration in Texas within 90 days of the mediation.  The parties agree that the binding arbitration proceedings and result will be and remain confidential.  The parties agree to arbitrate before one arbitrator.  The parties agree to negotiate in good faith regarding the selection of the arbitrator and the rules and procedures governing the arbitration.  In the event the parties are unable to agree about such matters, the arbitrator will be selected, and the arbitration will be conducted in accordance with the most current version of the American Arbitration Association Commercial Arbitration Rules.

(Letter Agreement ¶ 7.)

[4] Discover objects to the Court's consideration of the affidavits submitted in connection with Mission and TETCO's reply because they are untimely and because they address arguments raised for the first time in reply briefing.  (See Discover's Sur-Reply [Doc. # 82] at 1–2.)  However, the Court granted Discover permission to file a sur-reply and additional supporting documents to address and rebut the issues raised in Mission and TETCO's reply, and thus the Court will consider these documents and the arguments raised in the reply.

4

Aff., Ex. A to Discover's Sur-Reply [Doc. # 82] ¶¶ 4, 6.)  Seven months later, on March 29, 2012, Discover filed the instant action.

On June 15, 2012, TETCO, with its subsidiary Mission, also filed suit in Texas state court, seeking specific performance to compel arbitration under the Letter Agreement.  Discover removed the case to federal court in the Southern District of Texas on July 13, 2012.   On July 20, 2012, Discover moved to dismiss the Texas action for improper venue or in the alternative to transfer to the District of Connecticut.   On October 12, 2012, the Southern District of Texas granted Discover's motion to transfer pursuant to the first-to-file rule.  (*See TETCO, Inc., et al. v. Discover Property & Casualty Ins. Co.*, No. 12cv1485, Oct. 12, 2012 Order [Doc. # 17].)   Discover moved [Doc. # 44] to consolidate these two cases before this Court, which motion was granted on October 23, 2012.  (*See* Order of Consolidation [Doc. # 47].)

On September 26, 2012, before either this Court or the Southern District of Texas had ruled on the pending motions, TETCO filed a Demand for Arbitration in Texas to resolve the dispute.  On October 10, 2012, Discover moved [Doc. # 40] for a preliminary injunction to stay the Texas arbitration until the motions pending in both federal courts had been decided.   During a status conference held before this District's duty judge on October 15, 2012, the parties agreed to informally stay arbitration pending the Court's ruling on Mission and TETCO's pending motion to dismiss for lack of personal jurisdiction and improper venue and motion to transfer to a more convenient forum.  (*See* Order [Doc. # 43] (denying as moot Discover's motion for preliminary injunction).)

On March 18, 2013, this Court denied Mission and TETCO's motions to dismiss and to transfer, finding that the Court had personal jurisdiction over the parties and that the forum was proper pursuant to the forum-selection clause in the Indemnity

Agreement.  (*See* Ruling on Mot. to Dismiss and to Transfer [Doc. # 66].)  Specifically, the Court determined that "the arbitration clause in the Letter Agreement did not abrogate the forum selection clause in the Indemnity Agreement, and Discover has alleged sufficient facts to claim that the Court retains personal jurisdiction over TETCO pursuant to this clause for the purpose of determining the arbitrability of this dispute."  (*Id.* at 9.)

## II.    Discussion[5]

Mission and TETCO move to compel arbitration of this dispute pursuant to the arbitration clause in the Letter Agreement, and to dismiss this action, or in the alternative, to stay the action pending arbitration.  The Federal Arbitration Act provides that

> [a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such a contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration any existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[5]  When deciding a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment."  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  The party seeking to compel arbitration "must substantiate [its] entitled to arbitration by a showing of evidentiary facts" that support its claim that an agreement to arbitrate exists.  *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).  Once such a showing has been made, the party opposing arbitration "must submit evidentiary facts showing that there is a dispute of fact to be tried" as to the existence of a valid arbitration agreement.  *Id.*  "If there is an issue of fact as to the making of the agreement for arbitration, then a trial [on that issue] is necessary."  *Bensadoun*, 316 F.3d at 175.  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."  *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980).

9 U.S.C. § 2.  The Act establishes "a liberal policy in favor of arbitration as a means to reduce the costliness and delays of litigation."  *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 665 (2d Cir. 1997) (internal quotation marks omitted) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1063 (2d Cir. 1993).   "[P]rior to compelling arbitration, the . . . [C]ourt must first determine two threshold issues . . . (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?"  *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003).

Discover does not contest that the underlying dispute in this case falls within the scope of the arbitration clause in the Letter Agreement.  Rather, Discover opposes this motion on the basis that (1) the arbitration clause has expired; (2) Mission and TETCO waived the right to arbitrate the dispute; and (3) the arbitration clause is invalid because it is not supported by consideration.  Mission and TETCO counter that according to the terms of the Letter Agreement, the expiration and validity of the arbitration clause and the issue of waiver are reserved for the arbitrator, and that the Court must therefore compel arbitration to decide these threshold issues.

### A.   Choice of Law

"While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, *but not more so.*"  *Id.* at 364 (internal citations and quotation marks omitted) (emphasis in original).  "Accordingly, while the FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act, in evaluating whether the parties have entered into a valid

arbitration agreement, the court must look to state law principles." *Id.* (internal citations and quotation marks omitted). The parties contest whether this dispute is governed by Texas or Connecticut law.

"As a federal court siting in diversity jurisdiction, [this] Court is obligated to apply the law of the forum state in analyzing preliminary choice-of-law questions." *Id.* at 365 (internal citations and quotation marks omitted). "The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case, if not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied." *Cohen v. Roll-A-Cover, LLC*, 131 Conn. App. 443, 465–66 (2011). "When the applicable law of a foreign state *is not shown to be otherwise*" Connecticut courts will presume it to be the same as Connecticut law. *Id.* at 465 (quoting *Walzer v. Walzer*, 173 Conn. 62, 76 (1977)) (emphasis in original).

Discover argues that because Mission and TETCO have failed to identify any differences between Texas and Connecticut law concerning the issues in dispute in this case, this Court should rely on Connecticut law. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 n.2 (2d Cir. 2013) ("[C]ourts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs."). However, Mission and TETCO do highlight a potential conflict with respect to the question of consideration. Discover cites only Connecticut law for the proposition that the parties' mutual agreement to arbitrate is not supported by adequate consideration because the settlement payment was made prior to the signing of the Letter Agreement. (*See* Discover's Opp'n [Doc. # 70] at 9–12.) However, "the law in Texas is clearly established that mutual agreements to arbitrate disputes and to give up the right to

8

litigate constitute adequate consideration for an arbitration agreement." *Jiminez v. Alicia's Mexican Grille, Inc.*, Civil Action No. H-11-2695 (NFA), 2011 WL 4842467, at *1 (S.D. Tex. Oct. 12, 2011) (citing *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010)).  Thus, there appears to be a conflict of law between Texas and Connecticut regarding this issue, and the Court must determine which law governs.

Discover argues that because the Court previously applied the forum-selection clause in the Indemnity Agreement in concluding that it has personal jurisdiction over Defendants, it should also apply the choice-of-law clause in that agreement to determine that Connecticut law governs the interpretation of the Letter Agreement.  The choice-of-law clause in the Indemnity Agreement states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut, without regard to its rules regarding conflict of laws."  (Indemnity Agreement at 13.)  While this clause would mandate the application of Connecticut law to a dispute regarding the interpretation of the Indemnity Agreement, by its plain terms it does not purport to govern all disputes arising out of or related to the Indemnity Agreement, or to apply to any other contracts.  Therefore, it is not applicable to the Letter Agreement, which is a separate contract negotiated between different parties.  *See Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 145 Conn. App. 169, 202–03 (2013) (where a choice-of-law clause was not a "complete" choice-of-law clause, and only addressed the construction and interpretation of the contract itself, the provision did not control the choice-of-law analysis for issues not involving the construction or interpretation of the contract in which it was found).  Furthermore, the Letter Agreement itself does not contain a choice-of-law provision.

Connecticut has adopted the "most significant relationship" approach to determining which jurisdiction's law governs a contract, and "[w]here there is no choice of law provision in the contract, the general rule to be applied is that of [the Restatement (Second) of Conflict of Laws] § 188." *American States Ins. Co. v. Allstate Ins. Co.*, 282 Conn. 454, 461 (2007). Section 188 of the Restatement sets forth five factors for courts to consider in determining the applicable law: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance (d) the location of the subject matter of the contract; and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2). Further, "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Id.* § 188(3).

Based on the affidavits submitted by the parties, the Letter Agreement appears to have been negotiated and executed in Texas (*see* Melinda Bradley Aff. ¶ 2; Matthew Bradley Aff. [Doc. # 76] ¶¶ 8–12.) Thus, the place of contracting and the place of negotiation of the contract is Texas. Furthermore, the place of performance is Texas, as the parties' mediation was conducted in Texas (*see* Melinda Bradley Aff. ¶ 3), and the Letter Agreement calls for the parties to submit the dispute to arbitration in Texas (*see* Letter Agreement § 7). Similarly, the location of the subject matter of the contract is Texas, because the Letter Agreement calls for Texas mediation, and involved the settlement of a Texas lawsuit regarding an accident that occurred in Texas. With respect to the final factor, Discover has its principal place of business in Connecticut while Mission and TETCO are citizens of Texas. (*See* Compl. ¶¶ 11–12.) Therefore, based on

10

the totality of the § 188 factors, this Court will apply Texas law in interpreting the Letter
Agreement.

> **B.      Whether the Court or the Arbitrator Should Decide Discover's
> Arguments**

In its ruling on the motions to dismiss for lack of personal jurisdiction, this Court
held that

> the Indemnity Agreement and the Letter Agreement could be read
> together to mean that TETCO waived personal jurisdiction objections for
> the purposes of a suit in Connecticut to determine whether there is a valid
> agreement between the parties to arbitrate this dispute.  Therefore, the
> arbitration clause in the Letter Agreement did not abrogate the forum
> selection clause in the Indemnity Agreement, and Discover has alleged
> sufficient facts to claim that the Court retains personal jurisdiction over
> TETCO pursuant to this clause for the purpose of determining the
> arbitrability of this dispute.

(Ruling on Mot. to Dismiss and to Transfer at 9.)  However, Mission and TETCO now
argue, for the first time in their reply, that the defenses to arbitration raised by Discover
must be decided by the arbitrator, pursuant to federal law and the terms of the arbitration
clause.  The Supreme Court has determined that procedural questions including "waiver,
delay, or other like defenses to arbitrability" . . . [and] "whether prerequisites such as time
limits, notice, laches, estoppel, and other conditions precedent to an obligation to
arbitrate have been met" are not "questions of arbitrability," but rather are presumptively
questions for the arbitrator, not the court, to decide.  *Howsam v. Dean Witter Reynolds,
Inc.*, 537 U.S. 79, 84–85 (2002).  Furthermore, the arbitration clause states that if the
parties cannot agree on the rules and procedures governing the arbitration, "the
arbitration will be conducted in accordance with the most current version of the
American Arbitration Association Commercial Arbitration Rules."  (Letter Agreement,

11

§ 7.)  Pursuant to the AAA Rules, "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement [and] shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."  (AAA Rules, Ex. F to Morris Aff. R-7.)   Thus, Mission and TETCO argue, any procedural challenges to arbitration, in addition to any challenge to the validity of the arbitration clause itself, are reserved for the arbitrator by the terms of the Letter Agreement.

### 1.    Expiration of the Arbitration Agreement

Discover argues that Mission and TETCO failed "to submit the matter to binding arbitration in Texas within 90 days of the mediation" as required by the Letter Agreement and that therefore the arbitration clause has expired.  Mission and TETCO argue that the timeliness of their arbitration demand must be decided by the arbitrator, rather than by the Court, and that in any event, they had "submitted" the dispute to arbitration before the deadline passed, even though no arbitration demand had been filed.

Time-bar defenses to arbitration agreements are typically recognized as procedural questions that are reserved for arbitrators, rather than courts.  *Matter of Arbitration No. AAA13-161-0511 Under Grain Arbitration Rules*, 867 F.2d 130, 133 (2d Cir. 1989) ("[T]he validity of time-bar defenses to the enforcement of arbitration agreements should generally be determined by the arbitrator rather than the court."); *accord Gen. Warehousemen and Helpers Union Local 767, Albertson's Distribution, Inc.*, 331 F.3d 485 (5th Cir. 2003) ("Questions of timeliness are ones of procedural, not substantive, arbitrability," to be decided by the arbitrator.).   Thus, in *Howsam*, the Supreme Court concluded that the issue of whether an arbitrator-imposed period of

12

limitations had expired was within "the class of gateway procedural disputes" that should be determined by an arbitrator in the first instance. *Howsam*, 537 U.S. at 86.

Discover attempts to distinguish *Howsam* by arguing that only arbitrator-imposed time limits should be reserved for arbitrators and that courts should interpret deadlines contained in an arbitration agreement in the first instance. However, the Second Circuit has "stated emphatically that *any* limitations defense—whether stemming from the arbitration agreement, arbitration association rule, or state statute, is an issue to be addressed by the arbitrators." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991). The cases cited by Discover in support of its position that the Court should rule on the expiration issue do not require a different outcome, as those cases addressed either arbitration clauses that were contained in contracts that had expired, *see Dash & Sons, Inc. v. Tops Markets, LLC*, 30 A.D.3d 98 (N.Y. App. Div. 2006); *Local Union No. 898 of Int'l Bhd. of Elec. Workers, AFL-CIO v. XL Electric, Inc.*, No. Civ.A.6:01-CV-059-C, 2002 WL 31689677 (N.D. Tex. Nov. 26, 2002), or arbitration clauses that expressly provided for litigation of a dispute after the arbitration deadline had passed, *see LaFurno v. Virbac Corp.*, Civil Action No. 11-4774 (SRC), 2012 WL 646029 (D.N.J. Feb. 24, 2012).

Thus, absent language in the arbitration clause suggesting that the parties intended for a court to decide questions of timeliness, the Court will not address Discover's argument that the arbitration clause has expired. Discover points to no such language in the Letter Agreement, nor does the Court conclude that there is any language susceptible to such an interpretation in the contract. Therefore, Discover's time-bar defense will be reserved for the arbitrator.

13

2.     *Waiver*

Discover next argues that Mission and TETCO waived their right to arbitrate by refusing to select an arbitrator and dates for arbitration and by failing to submit an arbitration demand until after this litigation had commenced.   Mission and TETCO counter that the issue of waiver should be decided by the arbitrator, and that they did not waive their right to arbitrate their dispute by failing to file an arbitration demand because it is Discover that bears the burden of demanding arbitration as Discover is the only party seeking affirmative relief.

"[T]he presumption is that the arbitrator should decide allegations of waiver . . . ." *Howsam*, 537 U.S. at 84 (internal citations and quotation marks omitted); *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) ("Both waiver and estoppel generally fall into that latter group of issues presumptively for the arbitrator. . . . Furthermore, we have noted that 'defenses to arbitrability such as waiver, estoppel, or delay' are 'questions properly decided by arbitrators.'" (quoting *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 46 (2d Cir. 2003))).   Discover argues that because it alleges waiver by litigation conduct, the Court should decide the issue of waiver in this case, as several other courts in this Circuit have done.  *See, e.g., Apple & Eve, LLC v. Yantai North Andre Juice Co., Ltd.*, 610 F. Supp. 2d 226, 230–31 (E.D.N.Y. 2009) ("Both the First and Fifth Circuits have explicitly held that despite the Supreme Court's statement in *Howsam*, the specific type of waiver dispute in this case— one involving an allegation of waiver due to litigation conduct—should be determined by a judge rather than an arbitrator. . . . . Although the Second Circuit has not ruled on this specific issue, courts in this Circuit have continued to apply Second Circuit precedent preceding *Howsam* to address the waiver issue in cases involving litigation conduct before

14

the Court." (citing cases)).  *Cf. Baker & Taylor v. AlphaCraze.Com Corp.*, 602 F.3d 486 (2d Cir. 2010) (deciding issue of waiver by litigation conduct).  Because courts have the most familiarity with the litigation conduct of the parties in the cases before them, the Court agrees with the line of cases in this Circuit holding that waiver by litigation conduct is an issue to be decided by the Court in the first instance.

As a result of the strong policy in favor of arbitration, "waiver of arbitration is not to be lightly inferred," and "any doubts concerning whether there has been a waiver are resolved in favor of arbitration."  *PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (internal quotation marks and citations omitted). "There is no bright–line rule for determining when a party has waived its right to arbitration:  the determination of waiver depends on the particular facts of each case."  *Id.* at 107–08. However, the Second Circuit has recognized three factors which courts should consider in determining whether a party has waived the right to arbitrate a dispute:  "(1) the time elapsed from commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *Id.* at 107.

Here, Mission and TETCO moved to compel arbitration on March 29, 2013, a year after this suit commenced.  However, Mission and TETCO asserted their right to arbitrate this dispute in their motions to dismiss and to transfer, which were filed less than three months after the filing of this action.[6]  At the same time that they moved to dismiss and to transfer, Mission and TETCO filed suit in Texas to compel arbitration.

---

[6] These motions were originally filed on June 15, 2012, but were denied without prejudice to renew for failure to comply with the Court's pre-filing conference requirement, and were renewed on August 1, 2012.

Approximately three months after that, they also filed an arbitration demand.  The only delay that Discover relies on in making its waiver argument is Mission and TETCO's pre-litigation delay in refusing to select an arbitrator and failing to submit an arbitration demand within the time-period of the arbitration clause and for several months thereafter.  However, this delay does not relate to Mission and TETCO's litigation conduct in this case, and delay alone is insufficient to establish waiver.  *See PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) ("Delay does not necessarily demonstrate prejudice.").  As soon as this suit commenced, Mission and TETCO asserted their right to arbitrate in multiple fora.  Additionally, there has not been significant litigation conduct in this action, such a discovery or motions for summary judgment, beyond the litigation of the parties' respective rights to arbitrate in connection with the motion to dismiss and the motion to compel arbitration.  Thus, the time elapsed and the amount of litigation conducted do not weigh in favor of a finding of waiver.

Furthermore, Discover cannot establish that it was prejudiced as a result of the alleged delay.  "Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir. 1991); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 595 (Tex. 2008) ("[W]aiver of arbitration requires a showing of prejudice.").  Such prejudice need not be substantive, and "can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes unnecessary delay or expense." *Kramer*, 943 F.3d at 179–80 ("[T]he prejudice required for waiver is not limited to substantive prejudice, but may also be prejudice in terms of either expense or delay."); *see also Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir. 1993) ("Sufficient prejudice to

16

infer waiver has been found when a party seeking to compel arbitration . . . delays invoking arbitration rights while the adversary incurs unnecessary delay or expense.") In evaluating prejudice from undue delay and expense, the Second Circuit has explained that

> [n]o bright line defines this [ ] type of prejudice—neither a particular time frame nor dollar amount automatically results in such a finding—but it is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances.

*Kramer,* 943 F.3d at 179.  In this case, nearly all of the litigation expenses incurred by Discover have been in relation to Discover's attempt to block arbitration of this dispute. Although the Discover's expenses in filing this suit could arguably be characterized as arising from Mission and TETCO's failure to file an arbitration demand within ninety days of mediation, since the commencement of this action, Mission and TETCO have consistently asserted their rights to arbitrate, and the majority of the motion practice in this case has been related to issues of arbitrability. Therefore, Discover has not been prejudiced by the delay in the resolution of this dispute as a result of Mission and TETCO's failure to assert their rights to arbitrate, and the Court concludes that no waiver occurred.

### 3. Lack of Consideration

Finally, Discover argues that the parties' agreement to arbitrate is invalid because it is not supported by consideration.  Specifically, Discover claims that because the settlement payments were made before the Letter Agreement was executed, the purported consideration for the agreement is "past consideration," which is invalid.  To the extent that Discover challenges the validity of the Letter Agreement as a whole, that issue is

reserved for the arbitrator.  "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2778 (2010).  "As a result, 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)).  Thus, the Court will not address any challenge to the validity of the Letter Agreement as a whole, as that issue is properly reserved for the arbitrator.

Although a challenge to the validity of an arbitration clause is typically decided by a court in the first instance, Mission and TETCO argue that the language of the arbitration clause indicates that the parties intended for the arbitrator to decide this issue. Specifically, the arbitration clause states that in the event that the parties cannot agree on the arbitration procedure, "the arbitration will be conducted in accordance with the most current version of the American Arbitration Association Commercial Arbitration Rules." (Letter Agreement § 7.)  The AAA Rules provide that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement [and] shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." (AAA Rules, Ex. F to Morris Aff. R-7.)  The Second Circuit, applying the Federal Arbitration Act, has recognized that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as a clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Burlington*

18

*Resources Oil & Gas Co. v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 41 (Tex. App. 2007) ("We are also mindful that, in certain circumstances, the incorporation of AAA rules may constitute clear and unmistakable evidence of an intent to allow an arbitrator to decide issues of arbitrability.").  There is no other language in the arbitration clause to contradict this presumption or to suggest that issues of arbitrability are to be decided by a court.  Therefore, the Court concludes in the context of this commercial arbitration agreement between sophisticated parties that the incorporation by reference of the AAA rules evinces a clear and unmistakable intent to reserve challenges to the validity of the arbitration agreement to the arbitrator in the first instance, and the Court will not address the merits of Discover's argument that the arbitration clause is invalid for lack of consideration.

To the extent that Discover has asserted defenses to arbitration that may properly be decided by a court in the first instance, this Court has rejected those defenses. Therefore, the Court grants Mission and TETCO's motion to compel arbitration and to dismiss.  *See Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) ("Because all of Ironman's claims are subject to arbitration, no useful purpose will be served by granting a stay of Ironman's claims and thus its action against the defendants is dismissed.").

### C.    Attorney's Fees

In the memorandum in support of their motion to compel arbitration, Mission and TETCO seek recovery of their attorney's fees and expenses moving to compel arbitration.  (Mem. Supp. [Doc. # 68-1] at 9.)  The United States follows the "American Rule" in that attorney's fees are not awarded to prevailing parties absent statutory or contractual authority to do so.  *See Buckhannon Bd. and Care Home, Inc. v. West Virginia*

*Dep't of Health and Human Servs.*, 532 U.S. 598, 602 (2001).  Mission and TETCO cite no legal authority for their request for attorney's fees, and the Letter Agreement expressly provides that the parties shall bear their own costs in connection with this dispute.  (*See* Letter Agreement § 9.)  Therefore, Mission and TETCO's request for attorney's fees and costs is denied.

## III.    Conclusion

For the foregoing reasons, Mission and TETCO's Motion [Doc. # 68] to Compel Arbitration and to Dismiss is GRANTED.  The Clerk is directed to enter judgment of dismissal and to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 19th day of February, 2014.